**Sharon HAZARD et al., Plaintiffs,**

v.

**Dr. Louis SULLIVAN et al., Defendants.**

**No. 3:91–0193.**

United States District Court,
M.D. Tennessee,
Nashville Division.

July 21, 1993.

Lenny Lee Croce, Paul E. Drozdowski, Oak Ridge, TN, George Gordon Bonnyman, Jr., Nashville, TN, for plaintiffs.

Michael L. Roden, Office of the U.S. Atty., Nashville, TN, for defendant Louis Sullivan.

Jerry Wayne Taylor, Office of the Atty. Gen., Nashville, TN, for defendants Robert Grunow and Russell White.

## MEMORANDUM

Wiseman, District Judge.

At issue here is the validity of certain state and federal regulations administering the Aid to Families with Dependent Children and Medicaid programs. Eligibility in these programs is contingent on the amount of resources a family possesses. Federal and state regulations allow a family to exclude from this calculation of family resources up to $1,500 for an automobile. Plaintiffs contend that this automobile exclusion limit lacks a rational basis; Defendants contend that it falls well within the bounds of discretion granted to administering agencies to set substantive policy. Both Plaintiffs and Defendants have filed summary judgment motions. For the reasons stated below, Plaintiffs' motion is granted. Furthermore, this Court's earlier preliminary injunction against further application of this exclusion limit is now made permanent.[1]

---

1. *See* Court's Order and Mem. of Jan. 1, 1992. In addition to granting a preliminary injunction, this prior Order denied the Plaintiffs' motion for class certification and granted the State Defendants motion to dismiss Defendants Grunow and White in their individual capacities.

## I

### Legal and Factual Background

The present controversy is a direct result of the budgeting dilemmas of the past two decades. At core is the extent to which the federal government may circumscribe one of its means-tested programs in order to save funds and still maintain a rational relation to the purpose of the program. The facts of this case illustrate one constraint on this rational relation: although budget demands may be served by an agency's refusal to amend its regulations to account for inflation, such failure may render the stated purpose of the regulation meaningless and thus the regulation itself arbitrary and capricious.

The means-tested programs at issue are the Aid to Families with Dependent Children ("AFDC") and Medicaid programs. The AFDC program is designed to "encourag[e] the care of dependent children in their own homes or in the homes of relatives" by providing financial assistance

> to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents and relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection....

42 U.S.C.A. § 601 (West 1991). The Medicaid program is designed,

> as far as practicable, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care....

42 U.S.C.A. 1396 (West 1992). These programs, therefore, are intended to create an atmosphere that fosters self-sufficiency, and are not meant to engender full reliance on the program.

The states administer these programs, and the federal government provides matching funds for approved state plans. The Secretary of Health and Human Services ("the Secretary") will grant approval to a state plan if it satisfies statutory requirements, *see* 42 U.S.C. § 602, and concomitant federal regulations.

In 1981, Congress passed the Omnibus Budget Reconciliation Act ("OBRA"). Pub.L. 97–35, 95 Stat. 357 (1981). This act was designed to cut costs in response to severe budget constraints, and one of the programs under the knife was AFDC. *See Dickenson v. Petit,* 692 F.2d 177, 179 (1st Cir.1982) (OBRA amended § 602 "to reduce the size of the AFDC grant."). To reduce the number of AFDC recipients, the amount of resources a family could possess and remain eligible for AFDC benefits was cut in half, from $2,000 to $1,000. *See* 42 U.S.C.A. § 602(a)(7)(B) (West Supp.1993). Certain resources were to be excluded from this eligibility calculation, however, including "so much of the family member's ownership interest in one automobile as does not exceed such amount as the Secretary [of Health and Human Services] may prescribe." *Id.* § 602(a)(7)(B)(i). As directed, the Secretary proposed and eventually prescribed a $1,500 limit on the automobile exclusion.[2] *See* 45 C.F.R. § 233.20(a)(3)(i)(B)(2) (1991).

The state of Tennessee adopted this automobile exclusion limit and applies it to its AFDC program through Tenn.Admin.Comp. Rule 1240–1–4–.10(2)(b). Tennessee also utilizes this regulation in the administration of one segment of its Medicaid program. Applicants for Medicaid under the "Medically Needy Children and Caretakers" provision (also known as "Category 6 applicants") may only possess an automobile of $1,500 in value before their eligibility is affected. Tenn.Admin.Comp.Rule 1240–3–3–.05(2)(a).

Plaintiffs have all been denied AFDC and/or Medicaid benefits because the equity value of the automobiles they owned caused them to exceed the resource limit on eligibili-

---

**2.** This is $1,500 in equity value (i.e., in actual value to the AFDC applicant). A fair market value measure was proscribed by the D.C. Cir-

cuit in *National Welfare Rights Org'n v. Mathews,* 533 F.2d 637, 649 (D.C.Cir.1976).

ty. Plaintiffs now seek a declaratory judgment (1) that the vehicle asset limit is arbitrary and capricious, (2) that it was promulgated in violation of the Administrative Procedure Act, 5 U.S.C. § 553, and (3) that the application of this limit to the Medicaid program is in violation of the Medicaid Act, 42 U.S.C. 1396 *et seq.* Plaintiffs also seek a permanent injunction against use of this asset limit in further determinations of AFDC and Medicaid eligibility. The Defendants respond in essence that, even if the asset limit is low and leads to numerous rejections, the Secretary and state agency have acted well within their grant of discretion to effectuate congressional intent.

In deciding the summary judgment motions now before the Court, the purpose of the statutes and regulations in question and the discretion to be afforded administrative agencies, *see Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), are foremost concerns. The standards governing the decision on a motion for summary judgment are well-established. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476–80 (6th Cir.1989). The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. Upon meeting this burden, the burden shifts to the nonmoving party, who cannot rest on its pleadings but must present some "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. A dispute about a material fact is "genuine" within the meaning of Federal Rule of Civil Procedure 56 only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Id.* at 252, 106 S.Ct. at 2512. The court is to construe the evidence and all inferences to be drawn from it in the light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513.

## II

### Analysis of the AFDC Regulations

■ Congress explicitly directed the Secretary of Health and Human Services to supply an acceptable limit for the AFDC automobile exclusion. The resulting regulation is therefore to be given considerable respect, and a court is not to substitute its judgment for that of the administrator of the agency in such a case. *See Chevron,* 467 U.S. at 843–44, 104 S.Ct. at 2782 ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.... [Thus], a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency."). "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844, 104 S.Ct. at 2782 (footnote omitted). Thus, although great deference is to be accorded the Secretary in this case, this deference is not unbounded. The Secretary is obligated to have exercised his discretion in a reasoned and justifiable manner that effectuates legislative purpose and does not lead to perverse results.

■ The Supreme Court has elaborated on the meaning of "arbitrary and capricious":

Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443, 458 (1983). Moreover, simply any reason proffered will not suffice indefinitely. Although a "decision of less than ideal clarity" will be upheld if "the agency's path may reasonably be discerned," *id.* at 43, 103 S.Ct. at 2866, the rationality review afforded administrative agencies is not as great as that afforded Congress, *see id.* at 43 n. 9, 103 S.Ct. at 2866 n. 9. "[A]n agency must cogently explain why it has exercised its discretion in a given manner, ... [and] the courts may not accept ... counsel's post hoc rationalizations for agency action." *Id.* at 48, 50, 103 S.Ct. at 2869, 2870.

■ The Court today, in holding that the $1,500 automobile asset limit is arbitrary and capricious, does so because it concludes that the reason offered initially for the automobile asset limit can no longer provide a rational basis for this regulation. To understand this conclusion, the original justification for the regulation must be discussed.

When Secretary Louis Sullivan prescribed the automobile exclusion limit in 1982, he relied on a 1979 survey of Food Stamp recipients to determine the typical value of automobiles held by needy individuals, and from this drew a conclusion as to an acceptable automobile allowance. As the Secretary said at the time:

> We chose $1,500 as the maximum equity value for an automobile on the basis of a Spring 1979 survey of food stamp recipients. Data from that survey suggest that 96 percent of all food stamp recipients who own cars had equity value in them of $1,500 or less. In that the Federal maximum limit should be set within the range of the vast majority of current recipients and given that the food stamp population tends to be, on average, more affluent than AFDC recipients, this [$1,500] limit appears reasonable and supportable.

47 Fed.Reg. at 5,657. Therefore, the Secretary sought to set an asset exclusion amount that would not in itself lead to application denials but would rather keep the "vast majority" of recipients in the program. The 50 percent reduction in allowable resources, as

explicitly established by Congress through OBRA, was to effect the reduction in welfare pay-outs; the automobile allowance, by the Secretary's own words, was intended to preserve eligibility, not diminish it.

The Court does not decide this case by determining whether the 1979 Food Stamp survey initially provided a rational basis for the $1,500 limit, even though the advisability of relying on this study in 1982 is debatable: between 1979 and 1982, financial conditions might have changed sufficiently that a $1,500 limit on the vehicle exclusion would not allow "the vast majority" of recipients to remain recipients. Thus, by 1982 there may have been no "'rational connection between the facts found and the choice made.'" *State Farm,* 463 U.S. at 43, 103 S.Ct. at 2866–67 (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 158, 83 S.Ct. 239, 240, 9 L.Ed.2d 207 (1962)). By 1993, this is certainly the case.

Inflation with regard to automobile costs has risen considerably over the last decade. *See Falin v. Sullivan,* 776 F.Supp. 1097, 1101 (E.D.Va.1991) (stating that "inflation has increased by 90 percent"); Pls.' Mem. in Supp. of Mot. for Summ. J., Exh. 4 (inflation statistics from 1992). This rise in automobile costs, without a concurrent adjustment in the level of the automobile exclusion, means that the Secretary's stated purpose is now thwarted: individuals, as they have to pay more for cars, will be subjected to possible AFDC or Medicaid denial because they possess an automobile. And this is exactly what happened to the Plaintiffs. The regulation has now become a tool for denying applications, instead of the tool for protecting self-sufficiency—by allowing receipt of benefits and possession of an automobile—that it originally was intended to be.

■ The fact that Congress, in OBRA, did not mandate a review of the apposite regulation to adjust for inflation does not alter this Court's opinion. First, congressional silence on the need for review of the effects of inflation does not necessarily equal a bar to such review. *Cf. Bob Jones Univ. v. United States,* 461 U.S. 574, 600, 103 S.Ct. 2017, 2032, 76 L.Ed.2d 157 (1983) ("Ordinarily, and quite appropriately, courts are slow to attrib-

ute significance to the failure of Congress to act on particular legislation."); *Maine Ass'n of Interdependent Neighborhoods v. Petit,* 659 F.Supp. 1309, 1323 (D.Me.1987) (holding that a Medicaid regulation was arbitrary and capricious for its failure to account for inflation, and noting that "[v]ague references to a congressional mandate to control inflation cannot justify" failing to take inflation into account). Second, the Secretary himself rendered this silence unimportant by promulgating a rationale for the regulation that implied sensitivity to changing financial conditions. Even if the Secretary generally has no affirmative duty to review regulations in the absence of congressional direction to do so, where a regulation's rationality is dependent on current socioeconomic conditions periodic review is essential to preserve that rationality.

As originally perceived, assuming that the regulation did allow the great majority of AFDC recipients to own a car if they needed to, the regulation may have furthered the general purpose of the AFDC program to foster independence rather than to engender full reliance on welfare. Owning an automobile can be crucial to having a job and generally to taking care of oneself (particularly in a largely rural state such as Tennessee). Yet to the extent that the regulation today leads to the denial of otherwise qualified applicants solely because they own a reliable car, the regulation denies benefits to that very group of people who possess a means toward self-sufficiency. Consideration of the effects of inflation, in order to determine a more reasonable limit on the automobile exclusion, would better align the regulation with the purposes of the AFDC program.

Because this Court reaches a conclusion directly contrary to that in *Falin v. Sullivan,* 776 F.Supp. 1097 (E.D.Va.1991), which considered the validity of the identical federal regulation, the relation of this opinion to that in *Falin* is briefly discussed. First, there is no direct disagreement with the *Falin* court's conclusion that the 1979 Food Stamp survey provided a reasonable basis for the regulation, *id.* at 1100–01, although as intimated above, this conclusion is debatable. Second, and where departure does occur, in this Court's opinion the *Falin* court misconceived the type of scrutiny the inflationary review question deserved. In rejecting the need for inflationary review, the *Falin* court did not examine the specific rationale articulated for the regulation, but looked only to whether Congress had mandated periodic review. *See id.* at 1101. Yet to determine whether "an explanation for [a] decision runs counter to the evidence before the agency," *State Farm,* 463 U.S. at 43, 103 S.Ct. at 2866, the specific explanation offered and its relation to the facts of a case must be examined. Moreover, "[i]t is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Id.* at 50, 103 S.Ct. at 2870. Recourse by a court or counsel to general legislative intent in order to justify a regulation is inappropriate because courts are directed to refrain from such gap-filling. *See id.* at 43, 103 S.Ct. at 2866 ("The reviewing court should not attempt itself to make up for [agency] deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given."). Accordingly, this Court undertook a detailed review of the *specific explanation offered by the Secretary* for the automobile exclusion regulation, and this more detailed review led to a different result from that in *Falin.*[3]

### III

### Analysis of Medicaid Regulations

The State of Tennessee incorporates the AFDC automobile exclusion limit into its Medicaid program to establish the automobile allowance available to Medicaid recipients under the "Medically Needy Children and Caretakers" provision (Category 6). This limit is arbitrary and capricious as it operates in the AFDC program, and as no separate rationale is offered to justify the limit's application to Medicaid, this limit is

---

**3.** The Court's decision on the rationality of the relevant regulation makes unnecessary the consideration of Plaintiffs' claim that the Secretary violated the Administrative Procedure Act when promulgating the asset exclusion rule.

also arbitrary and capricious with respect to Category 6.

The State Defendants seek clarification as to whether any limit on the automobile exclusion under Category 6 is permissible. With regard to Category 6, the federal statute controlling Medicaid eligibility delegates to states the authority to apply resource constraints that are no more restrictive than constraints in the state plan most closely categorically related. *See* 42 U.S.C.A. § 1396a(r)(2)(A) (West Supp.1993). The state plan most closely categorically related, according to the Department of Health and Human Services, is the AFDC plan. 42 C.F.R. § 435.485 (1992). Accordingly, the methodology for determining applicant resources under AFDC are also to be used in determining applicant resources under Category 6. If a valid automobile exclusion is promulgated for the AFDC plan, this exclusion may also be applied to Category 6 of the Medicaid plan.

### IV

In sum, the Court finds that there is no longer a rational connection between the facts originally supporting the automobile exclusion regulation and the regulation as it operates today. The original purpose of the regulation—to be set at such a level as to allow recipients to retain possession of a car—has become so detached from actual effect—indeed, the regulation today regularly leads to denials in and of itself because it is so low—as to make the current regulation arbitrary and capricious and not in accordance with law. Accordingly, an Order granting Plaintiffs' summary judgment motion will issue. This Order shall also permanently enjoin the Defendants from relying on 45 C.F.R. § 233.20(a)(3)(i)(B)(2) and Tenn.Admin.Comp.Rule 1240–1–4–.10(2)(b) to deny applications for AFDC or Category 6 Medicaid benefits.

### ORDER

For the reasons stated in the accompanying Memorandum, the Court hereby GRANTS the Plaintiffs' motion for summary judgment and DECLARES that the automobile resource exclusion stated at 45 C.F.R. § 233.20(a)(3)(i)(B)(2) and Tenn.Admin.Comp. Rule 1240–1–4–.10(2)(b) is arbitrary and capricious and is not in accordance with law. The Court PERMANENTLY ENJOINS the Defendants from relying on this regulation to deny an application for AFDC or Medicaid benefits.

It is so ORDERED.