Teral CHAMPION, Appellant,

v.

Donna E. SHALALA, Department of Health and Human Services; Charles M. Palmer, Director of Iowa Department of Human Services, Appellees.

No. 93–3967.

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1994.

Decided Aug. 26, 1994.

Nancy Combs, Iowa City, IA, argued (Martin Ozga, on the brief), for appellant.

Christine N. Kohl, Washington, DC, argued (Frank Hunger and Barbara C. Biddle, on the brief), for appellees.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

BOWMAN, Circuit Judge.

Teral Champion, seeking relief for herself and others similarly situated, brought this class-action suit against the Secretary of the United States Department of Health and Human Services (HHS) and the Director of the Iowa Department of Human Services (IDHS) [1], challenging as arbitrary and capricious the $1500 automobile-resource exemption set by the Secretary for recipients of Aid to Families with Dependant Children (AFDC). On cross-motions for summary judgment, the District Court [2] granted judgment for the defendants on all issues. Champion appeals, and we affirm.

### I.

The AFDC program is a cooperative federal-state program established by Congress in 1935 with the purpose of providing "financial assistance to needy dependent children and the parents or relatives who live with and care for them." *Shea v. Vialpando*, 416 U.S. 251, 253, 94 S.Ct. 1746, 1749, 40 L.Ed.2d 120 (1974). A principal goal of the program is "to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection." 42 U.S.C. § 601 (1988), *quoted in Vialpando*, 416 U.S. at 253, 94 S.Ct. at 1749.

In 1955, the Secretary began to impose upon the states income and resource limitations for AFDC recipients. With the passage of the Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, 95 Stat. 357 (1981) (OBRA), Congress for the first time statutorily limited allowable resources under the AFDC program. The OBRA amendments to the AFDC program reduced the amount of resources allowed an AFDC recipient to $1000 per family. At the same time, Congress delegated authority to the Secre-

tary [3] to exclude from this amount "so much of the family member's ownership interest in one automobile as does not exceed *such amount as the Secretary may prescribe.*" 42 U.S.C. § 602(a)(7)(B)(i) (Supp. IV 1992) (emphasis added). The Senate report accompanying the legislation explained that

> [t]he committee believes that the present regulatory limit allows AFDC to be provided in situations in which families have resources upon which they could reasonably be expected to draw.... The committee agreed to limit the value of resources to assure that aid would be restricted to those most in need.

S.Rep. No. 139, 97th Cong., 1st Sess. 503 (1981), *reprinted in* 1981 U.S.C.C.A.N. 396, 769–70. By regulation promulgated in 1982, the Secretary set the automobile-resource exemption at $1500, relying on a 1979 survey of Food Stamp recipients. 45 C.F.R. 233.-20(a)(3)(i)(B)(2) (1993). Any amount of equity that exceeds the $1500 limit is counted toward the general $1000 resource limitation established by statute.

Champion, the mother of a minor child, applied for and was granted AFDC benefits from May to December 1991. In December 1991, the IDHS terminated Champion's benefits after realizing that Champion's ownership interest in her 1988 Mazda sedan exceeded the $1500 limit, and that this excess ownership interest pushed her over the $1000 resource limitation, making her ineligible for AFDC benefits. Champion, who works two jobs and who, as a resident of rural Iowa, relies on her automobile for transportation to her jobs, brought suit challenging the rule, arguing that it was promulgated in violation of the Administrative Procedure Act and is arbitrary and capricious. 5 U.S.C. § 706 (1988). She requested declaratory, injunctive, and monetary relief. Rejecting Cham-

---

**1.** In response to Champion's motion for summary judgment, the Director of the IDHS stated that he has no authority to change the regulation at issue and defers to the Secretary's defense of it.

**2.** The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

**3.** During the years 1981 through 1994 the Secretaries of HHS have been: Richard S. Schweiker (1981–83), Margaret M. Heckler (1983–85), Otis R. Bowen (1985–89), Louis W. Sullivan (1989–1993), and Donna E. Shalala (1993–present).

pion's arguments, the District Court granted summary judgment for the defendants.

■ Champion then filed this timely appeal, renewing the arguments she made to the District Court. We review *de novo* a grant of summary judgment. As the parties agree that this case involves no disputed issues of material fact, summary judgment properly is awarded the party entitled to judgment as a matter of law. *Pentel v. City of Mendota Heights,* 13 F.3d 1261, 1263 (8th Cir.1994).

## II.

Champion argues that the Secretary's use of the 1979 Food Stamp survey to determine the appropriate automobile-resource exemption for the AFDC program resulted in an arbitrary and capricious rule because the data was not relevant to the AFDC population. She further contends that the resulting rule is contrary to AFDC's explicit statutory goal of aiding recipients in achieving maximum self-support and personal independence. The government counters by noting that in OBRA Congress granted the Secretary broad discretion in establishing the automobile-resource exemption and that the purpose of OBRA, the specific enabling statute, was to reduce federal spending and restrict AFDC benefits only to those most in need. Thus, the government argues that the Secretary's reliance on the Food Stamp survey was reasonable and that the rule fully comports with the statutory goals.

■ Our review of agency actions now is a familiar one. First, if Congress has addressed directly the precise issue at hand, the agency must execute Congress's directives. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). However,

[i]f Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

*Id.* at 843–44, 104 S.Ct. at 2782. Because here Congress expressly has delegated to the Secretary the power to establish the amount of the automobile exemption, 42 U.S.C. § 602(a)(7)(B)(i), deference to the Secretary's decision is "particularly important," and we will strike the regulation only if the Secretary's decision is unreasonable, *Emerson v. Steffen,* 959 F.2d 119, 121 (8th Cir.1992).

## A.

■ Although the Food Stamp survey is not a completely accurate reflection of the AFDC population, we have no basis for saying that the Secretary's use of it was unreasonable. The survey collected data on household assets and incomes from a nationwide, statistically valid sample of 11,300 households. According to Paul Bordes, the HHS official responsible for providing analytical support for the regulation writing process, in 1981 no AFDC study existed that included information on automobile equity, but the population of Food Stamp recipients extensively overlaps that of AFDC recipients. In 1981 the overlap was eighty percent. Thus, the Food Stamp survey was the only reasonably current source of the information needed to comply with OBRA's directive.[4] Moreover, under our standard of review, the Secretary is not required to use the best available source, but only to act reasonably. *See id.* at 121. More importantly, according to Bordes's affidavit, those Food Stamp recipients who are not on AFDC tend to be more

---

4. Champion also argues that the Secretary failed to respond adequately to comments submitted during the rule-making process. This argument lacks merit. The APA requires the Secretary to provide a reasoned response explaining why comments were rejected. A dozen comments were submitted regarding the automobile-resource exemption, ten of which criticized the automobile limit as too low. Nonetheless only one commenter proffered an alternative figure,

and none of the commenters suggested another source of evidence or data. Instead, the typical comment was a rather brief and generalized criticism of the proposed rule. The Secretary responded that he stood by his original decision as "reasonable and supportable." 47 Fed.Reg. 5648, 5657 (1982). Given the nature of the comments, we conclude that the Secretary's response was not inadequate.

affluent than AFDC recipients. Champion does not contest this statement. Therefore, as the District Court noted, it appears that the Secretary's use of the Food Stamp survey actually favored AFDC recipients. After carefully reviewing the record, we find the Secretary's use of the Food Stamp study to be a reasonable means of carrying out the duty delegated the Secretary by Congress.[5]

### B.

■ We also are not persuaded by Champion's argument that the Secretary's decision to set the automobile exemption at $1500 is unreasonable in light of the statutory purpose. The fundamental goals of the AFDC program remain intact: to provide assistance to needy families with dependent children and to do so in a way that encourages self-sufficiency. OBRA's amendments to the AFDC program, however, alter the method of pursuing these goals. *Minnesota v. Heckler,* 739 F.2d 370, 375 (8th Cir.1984). Congress's purpose in passing OBRA was to reduce spending and to restrict AFDC only to those households most in need. *See id.* ("Congress's goal in enacting OBRA clearly was to reduce federal spending."); *Dickenson v. Petit,* 692 F.2d 177, 179, 181 (1st Cir.1982) (noting that the amendments were enacted "to reduce the size of the AFDC grant" and to "disburs[e] benefits only to the most destitute"); *Philadelphia Citizens in Action v. Schweiker,* 669 F.2d 877, 879 (3d Cir.1982) (stating that the primary purpose of the amendments was to restrict welfare benefits only to the most needy). To this end, OBRA itself cut in half the general limit on resources allowable to those receiving AFDC benefits. We conclude that the Secretary's $1500 limit, which according to the survey would have affected only 3% of all Food Stamp recipients (and presumably fewer recipients of AFDC), is a reasonable accommodation of Congress's mandates to pro-

vide for the needy while reducing federal spending. *See Falin v. Sullivan,* 776 F.Supp. 1097, 1101 (E.D.Va.1991), *aff'd per curiam,* 6 F.3d 207 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1551, 128 L.Ed.2d 200 (1994); *but see Hazard v. Sullivan,* 827 F.Supp. 1348, 1352–53 (M.D.Tenn. 1993), *appeal filed,* No. 93–6214 (6th Cir. Sept. 10, 1993).

### III.

■ Champion next challenges as arbitrary and capricious the Secretary's failure to adjust the automobile exemption for inflation. We find this argument void of merit. Nothing in the language of OBRA supports the notion that the Secretary is obligated to increase the amount of the exemption absent a congressional directive. Congress, which has mandated cost-of-living adjustments in other programs, *see e.g.,* 42 U.S.C. § 415(i) (1988 & Supp. IV 1992) (Social Security benefits); 29 U.S.C. § 720(c) (1988 & Supp. IV 1992) (vocational rehabilitation grants), included no such provision in the OBRA amendments to the AFDC program. Moreover, as we have observed, OBRA itself cut in half the general limit on allowable resources under AFDC, and Congress has not adjusted that amount for inflation. Finally, the record demonstrates that Congress is aware of this issue, as it twice has considered amending the automobile exemption, but has declined to do so. Significantly, in 1988 a congressional committee directed the Secretary to revise the regulation "if [the Secretary] determines revision would be appropriate." H.R.Conf.Rep. No. 998, 100th Cong., 2d Sess. 189 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2776, 2977. Concluding that increasing the exemption to $3000 would cost the federal government in excess of $200 million and would require corresponding offsets in other programs for the needy, the Secretary declined to exercise

---

**5.** Champion futher urges that reliance on the survey was arbitrary and capricious because the survey was outdated, inaccurate, and incomplete. We are not persuaded. In 1981 the survey was only two years old and provided the best information available at that time. Champion contends that data on automobile equity was missing for 17.1% of the survey respondents, making the Secretary's analysis invalid. However, data on

automobile equity was provided by the remaining 82.9% of respondents and, of those, 79.9% either had no car or had equity of $1500 or less. The Secretary selected the $1500 figure because it would not affect the vast majority of those receiving AFDC in 1981. The missing 17.1% did not render the Secretary's reliance on the survey unreasonable.

his discretion. In these circumstances, the Secretary's failure to adjust the automobile exemption for inflation is not arbitrary and capricious. *See Garnett v. Sullivan,* 905 F.2d 778, 782–83 (4th Cir.1990) (holding that the Secretary of HHS is not obliged to adjust Supplemental Security Income to market conditions).

## IV.

■ Finally, Champion argues that, because the Secretary's exercise of her discretion under a similar provision of the Supplemental Security Income (SSI) program yielded a more liberal automobile-resource exemption, the Secretary acted in an arbitrary and capricious manner as to the AFDC program. This argument lacks merit. Champion cites no authority for the novel proposition that one federal aid program must be as generous as another, nor is this Court aware of such a requirement. The SSI program was established by different legislation and was intended to serve different populations and purposes. The dispositive consideration here is that the automobile exemption fully comports with Congress's intent and statutory goals. That being so, the exemption is not arbitrary and capricious.

## V.

As the District Court so aptly stated, "courts cannot remedy every social issue. Judicial activism erodes the legislative process, because it tends to relieve legislators from accountability for social reconstruction and constitutional propriety." *Champion v. Shalala,* 845 F.Supp. 1332, 1337 (S.D.Iowa 1993). Champion's lawsuit questions the social utility of requiring her to relinquish the reliable automobile she uses for transportation to her two jobs in order to qualify for AFDC. However, her remedy, if there is to be one, properly lies in the political arena, not with the courts. Accordingly, the judgment of the District Court is affirmed.

HEANEY, Senior Circuit Judge, dissenting.

I respectfully dissent. I would hold that 45 C.F.R. 233.20(a)(3)(i)(B)(2), which limits the automobile exemption for an AFDC recipient to $1,500 ownership interest in an automobile, is arbitrary and capricious in light of the failure by the Health and Human Services Secretary to take into account the effects of inflation since the regulation went into effect in 1982. This view is consistent with decisions reached by three district courts. *See Lamberton v. Shalala,* 857 F.Supp. 1349 (D.Ariz.1994); *Brown v. Shalala,* No. C–92–184–L, 1993 WL 742661 (D.N.H. July 21, 1993), *appeal filed,* No. 93–2369 (1st Cir. Dec. 23, 1993); *Hazard v. Sullivan,* 827 F.Supp. 1348 (M.D.Tenn.1993), *appeal filed sub nom. Hazard v. Shalala,* No. 93–6214 (6th Cir. Sept. 17, 1993).[1]

In particular I am convinced by the approach and reasoning of *Hazard v. Sullivan,* which identified the core issue as "the extent to which the federal government may circumscribe one of its means-tested programs in order to save funds and still maintain a rational relation to the purpose of the program." 827 F.Supp. at 1350. That court focused on the Secretary's specific proffered explanation for the $1,500 limit and concluded that it no longer provided a rational basis for the regulation.

The Secretary offered the following explanation when adopting the $1,500 limit:

We chose $1,500 as the maximum equity value for an automobile on the basis of a Spring 1979 survey of food stamp recipients. Data from that survey suggest that 96 percent of all food stamp recipients who own cars had equity value in them of $1,500 or less. In that *the Federal maximum limit should be set within the range of the vast majority of current recipients* and given that the food stamp population

---

**1.** In addition to these cases on appeal to the First and Sixth Circuits, there is an appeal pending in the Ninth Circuit from a decision holding the regulation valid. *See Gamboa v. Rubin,* No. 92–00397, 1993 WL 738386 (D.Haw. Nov. 4, 1993), *appeal filed,* No. 94–15302 (9th Cir. Jan. 26, 1994). The only circuit to reach the issue has also concluded that the regulation is valid. *See Falin v. Sullivan,* 776 F.Supp. 1097 (E.D.Va. 1991), *aff'd per curiam,* 6 F.3d 207 (4th Cir.

tends to be, on average, more affluent than AFDC recipients, this limit appears reasonable and supportable.

47 Fed.Reg. 5648, 5657 (1982), *cited in Hazard*, 827 F.Supp. at 1352 (emphasis added). The majority notes that the 1979 survey indicated that the $1,500 limit would affect only three percent of Food Stamp recipients, and presumably fewer AFDC recipients, and therefore concludes that the $1,500 limit strikes a reasonable balance between Congress's mandates to reduce federal spending while providing assistance to families in need. Even if the three percent figure were accurate in 1979, however, the percentage of AFDC recipients affected by the limit today would surely be higher given the level of inflation of automobile costs in the intervening fifteen years.

The Secretary chose the figure of $1,500 because the data indicated that this amount would have a negligible effect in terms of destroying current recipients' eligibility for AFDC. Although Congress certainly may specify cuts in federal assistance programs that have the effect of making fewer families eligible for a particular program—as indeed Congress did when it reduced by half the amount of resources a family could possess and still be eligible for AFDC—Congress expressly delegated to the Secretary the task of fixing the amount of the automobile equity exemption, and the Secretary's stated rationale was to choose an exemption amount at which relatively few otherwise eligible families would be eliminated from the program due to their ownership of an automobile. The government argues that the Secretary's statement reflects only a concern about maintaining the eligibility of *then*-current AFDC recipients so that large numbers of families would not be terminated abruptly. I disagree with such a narrow interpretation and conclude that the regulation fixing the $1,500 exemption, absent any adjustment for inflation, is no longer supported by the Secretary's stated rationale and therefore is arbitrary and capricious.

The fact that Congress did not mandate periodic review of the automobile exemption

1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1551, 128 L.Ed.2d 200 (1994).

amount does not change my conclusion. As the *Hazard* court pointed out,

[f]irst, congressional silence on the need for review of the effects of inflation does not necessarily equal a bar to such review. Second, the Secretary himself rendered this silence unimportant by promulgating a rationale for the regulation that implied sensitivity to changing financial conditions. Even if the Secretary generally has no affirmative duty to review regulations in the absence of congressional direction to do so, where a regulation's rationality is dependent on current socioeconomic conditions periodic review is essential to preserve that rationality.

827 F.Supp. at 1353 (citations omitted).

In my view, this regulation no longer has a rational basis, and I would hold it invalid.