Greg **NOBLE**, Elizabeth Clark, Ronda Duran, and all others similarly situated, Plaintiffs,

v.

Donna E. **SHALALA**, Secretary of the Department of Health and Human Services, Defendant.

Civ. A. No. 92 N 2495.

United States District Court, D. Colorado.

Nov. 30, 1994.

305

Linda J. Olson, Judith Caron Stein, Legal Aid Soc. of Metropolitan Denver, Denver, CO, Barbara L. Hughes, Pikes Peak Legal Services, Colorado Springs, CO, Melody K. Fuller, Boulder County Legal Services, Boulder, CO, for plaintiffs.

Chalk S. Mitchell, Asst. U.S. Atty., Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

NOTTINGHAM, District Judge.

This action challenges the validity of federal and state regulations which set a $1500 limit on the equity value of an automobile owned by a recipient of either Aid to Families with Dependent Children ("AFDC") or Medicaid. *See* 45 C.F.R. § 233.20(a)(3)(i)(B)(2) (1993); 9 Colo.Code Regs. 2503–1, § 3.661.13(c) (1991). All of the named plaintiffs own or have owned vehicles which exceed this limitation and, as a result, have been denied AFDC and/or Medicaid

benefits. Plaintiffs claim that Defendant Donna E. Shalala, Secretary of the Department of Health and Human Services ("HHS") [hereinafter the "Secretary"], or her predecessors, lacked a sufficient factual basis for the $1500 limit when the AFDC regulation was adopted in 1982. According to plaintiffs, the $1500 limit is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and violates both 5 U.S.C.A. § 706(2)(A) (West 1977), and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Plaintiffs seek declaratory and injunctive relief. Jurisdiction is based on 28 U.S.C.A. § 1331 (West 1993).

The matter is now before the court on cross-motions for summary judgment. The central issue raised by the parties' motions is the extent to which the federal government may circumscribe a means-tested program, such as AFDC or Medicaid, in order to save funds and still maintain a rational relation to the purpose of the program. *See Hazard v. Sullivan,* 827 F.Supp. 1348, 1350 (M.D.Tenn. 1993). Because I conclude that the $1500 limit maintains this rational relationship, I deny plaintiffs' motion for summary judgment and grant defendant's motion for summary judgment. *My decision concerning the summary judgment motions renders plaintiffs' motion for class certification moot.*

## FACTS

Plaintiff Greg Noble, his wife, and their three children applied for public assistance when he was unable to secure full-time employment. (Pls.' Mot. for Summ. J., Statement of Undisputed Material Facts ¶ 1, Ex. E [Noble Aff. ¶ 1] [filed Aug. 27, 1993] [hereinafter "Pls.' Mot."].) On November 19, 1992, Mr. Noble applied for Medicaid benefits for his children. (*Id.* ¶ 2 [Noble Aff. ¶ 4].) On December 30, 1992, he applied for financial assistance under the Aid to Families With Dependent Children–Unemployed Parent ("AFDC–UP") program, which is available to needy two-parent families. Eligibility for AFDC–UP includes Medicaid eligibility for the whole family. (*See id.* ¶ 3 [Noble Aff. ¶ 5].) Mr. Noble was notified that the value of his resources made him ineligible for any

assistance. (*Id.* ¶ 4 [Noble Aff. ¶ 6].) Specifically, in a letter dated February 16, 1993, the El Paso County, Colorado, Social Services Department stated that, according to the "Gold Book," a 1988 Firebird V6 in fair condition, such as the one owned by Mr. Noble, was worth $3520. (*Id.* ¶ 5 [Noble Aff. ¶ 9].) The value of this vehicle exceeded the $1500 limit established by the Secretary.

Because Mr. Noble needed reliable transportation in order to look for a job and to go to medical appointments, (*id.* ¶ 6 [Noble Aff. ¶ 6] ), he kept the vehicle despite the resulting denial of benefits. In mid-January, Mr. Noble finally secured full-time employment; however, he remains unable to pay his medical bills and other bills incurred during the period when he applied for and was denied financial and medical benefits. (*Id.* ¶ 7 [Noble Aff. ¶¶ 8–9].) According to Mr. Noble, but for the application of the $1500 limit, he would have received AFDC benefits and/or Medicaid benefits for the period of November 1992 through March 1993. (*Id.* ¶ 8 [Noble Aff. ¶ 10].)

In January 1993, Plaintiff Elizabeth Clark applied for Medicaid assistance through the "Baby Care/Kids Care" program for her fourteen-month-old son, Steven. Ms. Clark's application was denied based on her ownership of a 1987 Toyota Pickup. (*Id.* ¶ 9 [Am. Class Action Compl. ¶¶ 42–43, Ex. F (filed Feb. 26, 1993) (hereinafter "Compl.") ].) Ms. Clark had obtained two estimates from dealerships which valued the vehicle at $2500 and $2600. The Colorado Department of Social Services [hereinafter "CDSS"] averaged those two estimates to $2550, and found Ms. Clark ineligible because she exceeded by $50 the $1500 vehicle resource limit plus the $1000 liquid resource limit. (*Id.* ¶ 10, Ex. F, Compl. ¶ 43.) Although CDSS later agreed to accept the lower estimate, it nevertheless denied Ms. Clark eligibility based on the value of her boyfriend's used car, a 1969 Ford Pickup truck. (*Id.* ¶ 11, Ex. F, Compl. ¶ 43.) Ms. Clark has no medical insurance and needs Medicaid benefits in order for her son to receive the medical care he requires. (*Id.* ¶ 12 [Compl. ¶ 44].)

In April 1992, Plaintiff Ronda Duran and her four children were denied Medicaid and

AFDC benefits based on her ownership interest in a 1989 Ford Aerostar van which her mother had purchased for Ms. Duran's use. The vehicle's value was estimated at $4400. (*Id.* ¶ 13, Ex. G, Compl. ¶ 45.) After her benefits were denied, Ms. Duran gave the vehicle back to her mother and the title was changed to her mother's name. On January 25, 1993, Ms. Duran again applied for assistance. This time she was denied assistance because she had transferred a resource without adequate consideration. Ms. Duran requires financial and medical assistance in order to meet the needs of her children. (*Id.* ¶ 14, Ex. G, Compl. ¶¶ 46–46.)

At least two of the three named plaintiffs were denied AFDC and/or Medicaid benefits based on the $1500 motor vehicle equity limit, *see* 45 C.F.R. § 233.20(a)(3)(i)(B)(2), and its Colorado counterpart, *see* 9 Colo.Code Regs. 2503–1, § 3.661.13(c). (*Id.*, Other Undisputed Facts ¶ 15 [Compl. ¶¶ 1, 4]; *see* Def.'s Reply to Pls.' Summ. J. Mem., Resp. to Statement of Undisputed Material Facts at 7–8 [filed Sept. 16, 1993].) Pursuant to rule 23(c)(1) of the Federal Rules of Civil Procedure, plaintiffs request that I certify a class comprised of the named plaintiffs and the following similarly situated persons:

> All Coloradans who own a motor vehicle and who, within the three years immediately preceding the date this action was commenced or at any time thereafter, were denied or terminated from AFDC and/or Medicaid, solely because the equity value in their respective motor vehicles exceeds the $1,500 automobile resource limitation as set forth in 9 CCR 2503–1, § 3.661.13(c).

(*See* Pls.' Mot. for Class Certification at 1 [filed Aug. 20, 1993].)

## ANALYSIS

 A federal court has the power to declare unlawful and set aside agency regulations which are arbitrary, capricious, an abuse of discretion, or not in accordance with the law. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 37, 103 S.Ct. 2856, 2865, 77 L.Ed.2d 443 (1983); *Sullivan v. Zebley*, 493 U.S. 521, 527–29, 110 S.Ct. 885, 890, 107 L.Ed.2d 967 (1990). Under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), a court undertakes a two-part analysis when reviewing an agency's regulation. First, a court looks to the "plain meaning" of the statute to determine if the regulation responds to it. Where there is an express delegation of rule-making authority, the first prong of the analysis is unnecessary. *See Sullivan*, 493 U.S. at 527–29, 110 S.Ct. at 890. Second, if the statute is silent or ambiguous, a court must determine whether a given regulation is a permissible construction. *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82. A court must defer to an agency's construction of a statute if it is reasonable and consistent with the underlying congressional purpose. *Id.* Where the congressional delegation explicitly leaves a "gap" for the agency to fill, the deference accorded to the agency's construction is especially great, so long as the agency has considered the matter in a detailed and reasoned manner. *Id.* at 843–44, 104 S.Ct. at 2781–82. *See generally Falin v. Sullivan*, 776 F.Supp. 1097, 1100 (E.D.Va.1991), *aff'd*, 6 F.3d 207 (4th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1551, 128 L.Ed.2d 200 (1994).

The AFDC program was established by title IV of the Social Security Act of 1935, Pub.L. No. 74–271, 49 Stat. 627 (1935) (current version at 42 U.S.C.A. §§ 601–627 [West 1991 & Supp.1994] ). AFDC is a cooperative federal-state program which was established to provide "financial assistance to needy dependent children and the parents or relatives who live with them." *See Champion v. Shalala*, 33 F.3d 963, 965 (8th Cir.1994) (quoting *Shea v. Vialpando*, 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120 [ (1974) ] ). A principal goal of the program is "to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection." *Id.* at 253, 94 S.Ct. at 1749 (citing 42 U.S.C.A. § 601 [West 1991] ). Originally, AFDC included an exemption for one automobile, a family home, personal effects, and income producing property. In 1973, the Secretary of the Department of Health and Human Education and Welfare

(the predecessor to HHS) gave notice of a revision. That final revision allowed excess income of $2250.

The United States Court of Appeals for the District of Columbia Circuit struck down the $2250 limit in *National Welfare Rights Organization v. Mathews*, 533 F.2d 637 (D.C.Cir.1976). The court found that (1) the Secretary erroneously counted property at market value without regard to encumbrances and (2) the Secretary failed to articulate the facts underlying his decision. *See Falin*, 776 F.Supp. at 1099. As a result of this ruling, the Secretary replaced the $2250 limit with a $2000 limit and did not set any amount for the maximum allowable worth of automobile.

In 1981, Congress passed the Omnibus Budget Reconciliation Act ("OBRA"), Pub.L. No. 97–35, 95 Stat. 357, 844 (1982), in which it decreased the $2000 limit to $1000, and expressly delegated to the Secretary authority to set a limit on the equity to be exempted for an automobile for AFDC eligibility purposes. *See* 42 U.S.C.A. § 602(a)(7)(B) (West Supp.1994); 45 C.F.R. § 233.20(a)(3) (1976). (*See* Federal Def.'s Mot. in Supp. of Summ. J.Mot., Statement of Undisputed Material Facts ¶¶ 1–2 [filed Aug. 27, 1993] [hereinafter "Federal Def.'s Mot."].) The Secretary subsequently published an interim regulation which set the maximum automobile equity exemption at $1500. (*Id.* ¶ 3, Ex. 1 [46 Fed. Reg. 46750, 46755 (1981) ].) In the Federal Register, the Secretary stated that the $1500 automobile equity exemption was based on a Spring 1979 survey of food stamp recipients. (*See id.* ¶ 4, Ex. 2 [47 Fed.Reg. 5657 (1982) ]; Pls.' Resp. to Def.'s Mot. for Summ. J., Resp. to Statement of Undisputed Material Facts ¶ 4, Ex. 2 [filed Sept. 16, 1993] [hereinafter "Pls.' Resp."].) The Secretary explained:

> We chose $1,500 as the maximum equity value for an automobile on the basis of a Spring 1979 survey of food stamp recipients. Data from that survey suggest that 96 percent of all food stamp recipients who own cars had equity value in them of $1,500 or less. In that the Federal maximum limit should be set within the range of the vast majority of current recipients and given that the food stamp population

tends to be, on the average, more affluent than AFDC recipients, this limit appears reasonable and supportable.

*We Who Care, Inc. v. Sullivan*, 756 F.Supp. 42, 44 (D.Me.1991) (citing 47 Fed.Reg. 5657] ). The Spring 1979 survey supplied the principal data for the January 1981 Report to Congress by the Food and Nutrition Service of the United States Department of Agriculture entitled, "Assets of Low Income Household: New Findings on Food Stamp Participants and Nonparticipants," [hereinafter the "Food Stamp Survey"]. (*See* Federal Def.'s Mot., Statement of Undisputed Material Facts ¶ 5, Ex. 6.) The Food Stamp Survey was cited in the preamble to the final regulation setting the automobile exclusion limit. *See* 47 Fed.Reg. 5657 (1982). (*Id.* ¶ 6, Ex. 7 [Bordes Decl. ¶ 4].) The Secretary's final regulation, which limits the maximum automobile equity exemption to $1500, was codified at 45 C.F.R. § 233.20(a)(3)(i)(B)(2). (*Id.* ¶ 9.)

In H.R.Conf.Rep. No. 998, 100th Cong., 2d Sess. 188–189, *reprinted in* 1988 U.S.C.C.A.N. 2776, 2976–77, the conference committee directed the Secretary "to review regulations establishing limits on the value of a vehicle and to revise them if [s]he determined revision would be appropriate." (*Id.* ¶ 10, Ex. 4 [Dawson Decl. ¶ 2].) In 1990, the Secretary published in the Federal Register a notice that the $1500 automobile equity exemption was under review to determine an appropriate revision and indicated that a "Notice of Proposed Rulemaking" would be published. (*Id.* ¶ 11, Ex. 4 [Dawson Decl. ¶ 4, Attach. B at 1 (55 Fed.Reg. 16219 [1990] ) ].) However, a "Notice of Proposed Rulemaking" was never published, and, on December 15, 1990, the rule was withdrawn. (Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 11 [citing 56 Fed.Reg. 17358 (Apr. 22, 1991) ].) Although the Secretary had considered raising the automobile equity exemption to $3000, (*see* Fed. Def.'s Mot., Statement of Undisputed Material Facts ¶ 12, Ex. 4 [Dawson Decl. ¶ 7] ), she declined to do so. The Secretary determined that "it [was] not appropriate to modify the regulation at this time" and stated that "[u]nder the terms of the budget agreement, the

Department would need to offset these increased costs [of increasing the $1,500 automobile equity exemption] through reductions in other programs for poor families and children." (*Id.* ¶ 14, Exs. 3–4 [Jan. 21, 1992 letter from Louis W. Sullivan, M.D., Secretary, to Hon. Thomas J. Downey, Acting Chairman, Subcommittee on Human Resources, Committee on Ways and Means, House of Representatives; Dawson Decl. ¶¶ 7–8].)

■ According to plaintiffs, the Secretary acted arbitrarily and unreasonably in declining to raise the $1500 automobile equity limitation. Plaintiffs advance two levels of attack against the limitation. First, plaintiffs argue that the limitation has no rational relation to the purposes of the statute and is therefore arbitrary. As part of this first contention, plaintiffs argue that the $1500 limitation is unreasonable because (1) reliance on the Food Stamp Survey was irrational; (2) the effects of inflation rendered the Secretary's reliance on the 1979 figure unreasonable; and (3) the $1500 limit conflicts with Congress' intent to encourage self-sufficiency on the part of recipient households.

The Fourth and Eighth Circuits have previously addressed identical attacks against the $1500 limit. After an exhaustive examination of the various contentions, both circuits found the $1500 limit to be reasonable and neither arbitrary nor capricious. *See Falin,* 776 F.Supp. at 1100; *Champion,* 33 F.3d at 966–68. Although these circuits are not controlling, I find their treatment of these issues persuasive.

Those district courts which have found the regulation to be arbitrary have done so according to the following rationale. Assuming that it was reasonable for the Secretary to rely on the Food Stamp Survey in establishing the $1500 automobile limitation, it is no longer reasonable, given the effects of inflation, to rely on this figure. *See Brown v. Shalala,* 868 F.Supp. 405, 407 (D.N.H.1993); *Hazard,* 827 F.Supp. at 1351; *Lamberton v. Shalala,* 857 F.Supp. 1349, 1355 (D.Ariz. 1994). These courts do not dispute that, at the time the Secretary selected the $1500 limit, the Secretary's decision was reason-

able. Rather, these courts conclude that due to the subsequent change in market conditions, the $1500 figure is no longer valid.

While it is true that, in adopting the regulation, the Secretary gave no consideration to the effect of inflation between 1979 and 1982 and that there has been no periodic adjustment for inflation (*see* Pls.' Mot., Statement of Undisputed Material Facts ¶ 17 [Compl. ¶ 9; Federal Def.'s Answer to Am. Class Action Compl. ¶ 9 (filed Mar. 8, 1993)]), Congress has never directed the Secretary to make any adjustment for inflation. (*Id.* ¶ 15 [citing OBRA § 2302].) In fact, Congress has twice considered raising the automobile limitation amount to adjust for inflation, but has twice declined to do so. First, Congress rejected the House version of the Omnibus Budget Reconciliation Act of 1987, which contained a provision for up to five states to carry out AFDC programs with automobile exemptions that were adjusted for inflation. *See* H.R.Rep. No. 3435, 100th Cong., 1st Sess., § 9111(c), 133 Cong.Rec. H9284 (daily ed. Oct. 19, 1987) (proposal), Pub.L. No. 100–203, 101 Stat. 1330 (1987) (enacted). Second, Congress considered changing the $1500 limit during its consideration of the Family Support Act of 1988. However, the conference committee declined to do so and instead directed the Secretary to review the regulation and left to her discretion whether a revision was appropriate. *See* H.R.Conf.Rep. No. 998, 100th Cong., 2d Sess. 188–89, *reprinted in* 1988 U.S.C.C.A.N. 2776, 2976–77. Since Congress has elected not to impose review requirements, I cannot find that the Secretary acted arbitrarily in failing to revise the equity limit based on the effects of inflation. *See Hall v. Towey,* No. 93–1780–CIV–T–21B, slip op. at 7, 1993 WL 738454 (M.D.Fla. Dec. 10, 1993) (citing *Falin,* 776 F.Supp. at 1101; *Garnett v. Sullivan,* 905 F.2d 778, 782 [ (4th Cir.1990) ]); *see also Gamboa v. Shalala,* No. 92–00397, slip op. at 11, 1993 WL 738386 (D.Haw. Nov. 4, 1993) (distinguishing cases which required Secretary to adjust other regulations to market conditions).

■ Plaintiffs advance a second attack against the $1500 automobile limitation. They argue that the Secretary failed to fol-

low required administrative procedure in exercising his rule-making authority with respect to the regulation. According to plaintiffs, approximately ten commentators objected to the $1500 limit as too low to allow recipients to maintain decent and reliable automobiles. Plaintiffs maintain that the Secretary failed to adequately respond to these comments, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C.A. §§ 553–559 (West 1977 & Supp.1994). The APA requires that the Secretary provide a reasoned response explaining why comments were rejected.

The Secretary responded to the commentators by stating that he stood by his original decision as reasonable and supportable. *See* 47 Fed.Reg. 5648, 5657 (1982). Although the Secretary did not provide a detailed response to each criticism of the equity limit, his response implies that despite the commentary, he would continue to rely on the Food Stamp Survey as reasonable and reliable. *See Hall,* No. 93–1780–CIV–T–21B, slip op. at 7–8, 1993 WL 738454. Furthermore, as defendant points out, only one of the commentators suggested an alternative figure, and none suggested another source of evidence or data. Since none of the commentators articulated a persuasive basis for rejecting the $1500 figure, the Secretary's response—that he would continue to rely on the $1500 figure—was adequate to satisfy the requirements of the APA.

*Conclusion*

I conclude that the Secretary's continued reliance on the $1500 figure is reasonable and that Congress has not imposed any requirement to adjust the figure periodically for inflation. Accordingly, I do not find the $1500 limit to be "arbitrary, capricious, an abuse of discretion, or not in accordance with the law." *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 37, 103 S.Ct. at 2865. On the basis of the foregoing, it is therefore

ORDERED as follows:

(1) Plaintiffs' motion for summary judgment is DENIED.

(2) Defendant's motion for summary judgment is GRANTED.

(3) Plaintiffs' motion for class certification is DENIED as moot.