**Teral CHAMPION, individually, and on behalf of all others similarly situated, Plaintiff,**

v.

**Donna SHALALA, Secretary of Health and Human Services, and Charles M. Palmer, Director, Iowa Department of Human Services, Defendants.**

Civ. No. 3–92–CV–10127.

United States District Court, S.D. Iowa, Davenport Division.

Nov. 2, 1993.

Nancy Combs, Legal Services Corp. of IA, Iowa City, IA, Martin Ozga, Legal Services Corp. of IA, Des Moines, IA, for plaintiff.

Richard L. Richards, Asst. U.S. Atty., Barbara E. Galloway, Asst. Atty. Gen. of IA, Des Moines, IA, for defendants.

## ORDER

LONGSTAFF, District Judge.

THE COURT HAS BEFORE IT Plaintiff's motion for summary judgment, filed July 26, 1993. On September 7, 1993, Defendant Donna Shalala resisted plaintiff's motion and filed a cross motion for summary judgment.[1] Plaintiff filed a reply brief on September 29, 1993. A hearing was held by the Court on October 29, 1993.

## I. BACKGROUND

### A. Statement of the Case

In April, 1991, plaintiff class representative Teral Champion applied for and was granted benefits under the Aid to Families with Dependent Children (AFDC) program through the Johnson County, Iowa, division of the Iowa Department of Human Services ("DHS"). Ms. Champion indicated her ownership of a 1988 Mazda sedan on the application form.

On or about December 11, 1991, DHS terminated Ms. Champion's benefits on the basis that ownership of the sedan rendered her ineligible for AFDC benefits. The value of the sedan exceeded the $1,500 automobile equity limit set forth in 45 C.F.R. § 233.-20(a)(3)(i)(B)(2).[2]

Ms. Champion filed this action for a declaratory judgment and injunctive relief on August 18, 1992. This Court granted certification of plaintiffs' class on June 2, 1993.[3]

Plaintiffs claim the regulation at issue violates 5 U.S.C. § 553, and that the $1500

---

1. Defendant Palmer resisted plaintiff's motion on August 9, 1993. In his resistance, Palmer stated he has no authority to change the regulation at issue, and thus deferred to defendant Shalala to defend the regulation. The Court will refer to the two defendants collectively as ("the Secretary").

2. When combined with the general resource limit of $1000, this regulation makes a recipient who has more than $2,500 equity in a vehicle ineligible for AFDC.

3. Specifically, plaintiffs' class includes the following:
   All individuals in the State of Iowa who, since August 1, [1990,] both owned an automobile and who either:
   i. have applied for or will apply for and have been or will be denied AFDC benefits; or
   ii. were or will be terminated from AFDC benefits solely because the equity value in their automobile exceeded $1500 as set forth in 45 C.F.R. § 233.20(a)(3)(i)(B)(2) and 441 I.A.C. 41.6(1)d.
   *See* order of June 2, 1993.

equity limit is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law. Both parties now move for summary judgment on the basis that there are no issues of material fact.

### B. History of the Regulation

In 1975, the Secretary of the Department of Health, Education, and Welfare, (predecessor to the federal defendant in the case at bar) promulgated a regulation establishing a resource limitation of $2,250 for AFDC eligibility. 40 Fed.Reg. 12507 (1975). Certain property was exempted from the calculation of an applicant's total resources, including automobiles with a fair market value of $1,200 or less. If an automobile's value was more than $1,200, the amount exceeding $1,200 was counted toward the $2,250 limitation. *Id.*

This regulation was struck down by the District of Columbia Circuit Court of Appeals less than one year after its adoption. See *National Welfare Rights Organization v. Mathews*, 533 F.2d 637, 649 (D.C.Cir.1976). The court identified two specific defects in the regulation: 1) the Secretary erroneously considered the full fair market value of an automobile for purposes of the regulation, rather than the *equity* value to the applicant; and 2) the Secretary "failed to articulate factual determinations underlying [his] decisions." *Id.* The Secretary later revised the regulation to set a $2,000 limitation, but did not specify an automobile value limitation. 45 C.F.R. § 233.20(a)(3) (1976).

In 1981, Congress passed the Omnibus Budget and Reconciliation Act ("OBRA") 1981, which amended portions of the AFDC program. *See* 42 U.S.C.A. § 602 (West Supp.1993). OBRA 1981 *cut in half* the $2,000 general resource limit adopted earlier by the Secretary. The Statute specifically left to the Secretary the determination of an automobile equity limitation. 42 U.S.C.A. § 602(a)(7)(B) (West Supp.1993).

As noted by several courts, OBRA 1981 clearly intended to reduce the size of the AFDC program. *See e.g., Dickenson v. Petit*, 692 F.2d 177, 181 (1st Cir.1982) (AFDC should be available "only to the most destitute"). In *Philadelphia Citizens in Action v.*

*Schweiker*, 669 F.2d 877, 879 (3d Cir.1982), the court noted that "[t]he primary purpose of the OBRA amendments to the AFDC program is to reduce or eliminate welfare benefits for those considered by Congress to be less needy than those completely without resources."

Pursuant to Congress' direction, in 1981 and 1982 the Secretary adopted a $1,500 automobile equity limit for purposes of AFDC qualification, based on a Food Stamp recipient study included in the 1979 Survey of Income and Program Participation ("SIPP"). 47 Fed.Reg. 5,648 (1982); *see also* affidavit of Peter Fisher, attach to plaintiffs' reply brief. This limit has not been changed to date. *See* 45 C.F.R. § 233.20(a)(3)(i)(B)(2) (1991).

### II. APPLICABLE LAW AND DISCUSSION

#### A. Summary Judgment

Summary judgment is properly granted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party must establish its right to judgment with such clarity there is no room for controversy. *Jewson v. Mayo Clinic*, 691 F.2d 405, 408 (8th Cir.1982).

Both parties agree there are no issues of material fact. The Court finds this case can be appropriately resolved on summary judgment.

#### B. Review of the Present Regulation

■ In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), the Supreme Court stated: "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. . . . A court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." The Eighth Circuit follows a strict interpretation of *Chevron*: "[S]o long as the agency's interpreta-

tion is a reasonable one, it must be upheld." *Emerson v. Steffen*, 959 F.2d 119, 121 (8th Cir.1992). A reviewing court should not disturb an agency's judgment " 'unless it [is] arbitrary, capricious, or an abuse of discretion.' " *Id.* (*citing City of St. Louis v. Department of Transp.*, 936 F.2d 1528, 1522 (8th Cir.1991)).

In *Motor Vehicle Mfgrs. Ass'n v. State Farm Mutual Ins.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983), the Supreme Court provided a framework for determining whether an agency's action is arbitrary and capricious:

> [T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between facts found and the choice made." In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."
>
> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given.

(citations omitted); *see also Macon County Samaritan Memorial Hosp. v. Shalala*, 7 F.3d 762, 769 (8th Cir.1993).

In the present case, the Court finds Congress was silent under OBRA 1981 with regard to whether the automobile equity limit should periodically be adjusted for inflation. Under *Chevron*, and *Emerson*, the sole issue is whether the Secretary's regulation is rea-

sonable, or whether, as plaintiffs contend, the Secretary's adoption and continued use of the $1,500 equity limit is arbitrary, capricious, or an abuse of discretion.

1. Food Stamp Survey

■ Plaintiffs' first argument is that the Secretary's use of the 1979 Food Stamp recipient survey to set the $1,500 AFDC equity limit renders it arbitrary, capricious, and manifestly contrary to the statute. Plaintiffs argue that data unique to the AFDC population was available within the SIPP study, and that the Secretary "could have direct[ed] or hire[d] someone familiar with the SIPP data" to generate a table to reflect AFDC automobile patterns. *See* Affidavit of Peter Fisher, attached to plaintiffs' reply brief ("Fisher Affidavit"), at 1.

The standard of review is not however, whether the Secretary used the *best* available source to develop a regulation, but whether the Secretary's conduct was *reasonable*. *Emerson v. Steffen*, 959 F.2d at 121. In the present case, the Secretary noted that the Food Stamp population was generally more affluent than the AFDC population. Therefore, if over 90 percent of Food Stamp households had an automobile with less than $1,500 equity value, it was reasonable to conclude "the vast majority" of AFDC recipients would have automobiles with equal or less value. *See* Declaration of Paul Bordes, Defendant's Exhibit A, at 2. Use of a study actually *favoring* plaintiffs' class on which to base the equity limit was not "arbitrary and capricious."

This same conclusion was reached by the court in *Falin v. Sullivan*, 776 F.Supp. 1097, 1101 (E.D.Va.1991). The *Falin* court also noted that during the time allotted for public comment, no one identified better data on which to rely. *Id.* The *Falin* decision was recently affirmed per curiam by the Fourth Circuit Court of Appeals. *Falin v. Shalala*, 6 F.3d 207 (4th Cir.1993).[4]

---

4. The Court has considered but declines to address in detail plaintiffs' argument that the Food Stamp data was rendered obsolete by inflation between 1979 and 1981. This Court found the Secretary's decision-making process to be rea-

sonable. Furthermore, this Court is not in a position to evaluate the safety and reliability of an automobile valued at $1,500—whether judged by 1979, 1982, or 1993 economic standards.

**1336**

## 2. Lack of Provisions for Inflationary Review

■ Plaintiffs also claim that whether or not the regulation was reasonable in 1982, over time, the effects of inflation have rendered it invalid. This is precisely the holding in *Hazard v. Sullivan,* 827 F.Supp. 1348 (M.D.Tenn.1993). The court cited a 90 percent inflation rate over the previous decade, and concluded:

> This rise in automobile costs, without a concurrent adjustment in the level of the automobile exclusion, means that the Secretary's stated purpose is now thwarted: individuals, as they have to pay more for cars, will be subjected to possible AFDC or Medicaid denials because they possess an automobile.... *The regulation has now become a tool for denying applications, instead of the tool for protecting self-sufficiency ... that it originally was intended to be.*

*Id.,* at 1352 (emphasis added).

This Court declines to follow the *Hazard* court. The regulation itself was never "a tool for protecting self-sufficiency," but rather, was adopted from an enabling statute intended to eliminate benefits for "all but the most needy." *Philadelphia Citizens in Action v. Schweiker,* 669 F.2d at 879. It is true the automobile equity limitation likely conflicts with the purpose statement of the AFDC program. *See* Historical and Statutory Notes, 42 U.S.C.A. § 601 (1991) (1956 amendment restated purpose to include helping "such parents or relatives to attain the maximum self-support and personal independence ...").  Nevertheless, as long as the regulation reflects a reasonable interpretation of its enabling statute, this Court must defer to Congress to clear up any inconsistencies.

> The Court is also troubled by the Secretary's apparent failure to respond to all comments during the rulemaking process. Nevertheless, the Secretary has since reconsidered the $1,500 limit and continues to find it justified in light of Congressional budget restraints and competing welfare programs.

5. SSI regulations currently allow a $4,500 automobile exemption, and allow total exemption regardless of value if the vehicle is necessary for

Furthermore, the record demonstrates many Congressional committees, if not necessarily the entire Congress—are aware of the issue and continue to defer to the Secretary's judgment. *See* H.R.Conf.Rep. No. 998, 100th Cong., 2d Sess. 188–89, *reprinted in* 1988 U.S.C.C.A.N. 2776, 2976–77 (1988 Family Support Act-related congressional conference committee directed Secretary to review automobile equity limit and revise the limit "if he determines review would be appropriate."). The Secretary responded to this directive by completing an independent investigation into the effects of inflation on the automobile equity limit. After determining that increasing the automobile equity exemption to $3,000 would increase program costs more than $200 million annually, the Secretary decided it was not appropriate to raise the limit and force cutbacks in other programs for the needy. *See* Defendant's Exhibit C and attachments.

## 3. Inconsistency with Supplemental Security Income Program

■ Plaintiffs next contend the Secretary acted in an arbitrary and capricious manner by failing to adopt the same automobile equity limit under the AFDC program as it adopted under the supplemental security income ("SSI") program.[5] The Secretary argues the AFDC and SSI populations are separate and distinct, in that AFDC is aimed at single parents with children under eighteen, and SSI is aimed at persons age 65 or over, or those who are blind or disabled.

The Court cannot justify the obvious discrepancies between the two programs, and does not believe single parents with children have substantially different transportation needs from the aged, blind or disabled. Yet this Court is not charged with evaluating the consistency among federal welfare programs. Rather, this Court must determine solely

employment, medical treatment or transportation of a handicapped person. 20 C.F.R. § 416.-1218 (1992). Furthermore, SSI regulations also exempt from consideration under the general resource limitation the value of a vehicle that "is necessary because of climate, terrain, distance or similar factors to provide necessary transportation to perform essential daily activities." 50 Fed.Reg. 42683, 42687 (1985).

whether the Secretary's action is reasonable in light of the specific enabling statute—in this case, OBRA 1981. The intent behind this legislation is relatively clear. *See Philadelphia Citizens in Action v. Schweiker,* 669 F.2d at 879–80.

## III. CONCLUSION

■ For the reasons discussed above, the Court concludes the Secretary was not arbitrary and capricious, and acted in accordance of law in adopting the automobile equity limitations set forth in 45 C.F.R. § 233.-20(a)(3)(i)(B)(2).

The fact this Court does not find the actions of the Secretary to be arbitrary and capricious does not mean this Court supports maintaining the status quo. Yet the courts cannot remedy every social issue. Judicial activism erodes the legislative process, because it tends to relieve legislators from accountability for social reconstruction and constitutional propriety.

As the Eighth Circuit stated in *Emerson,* this Court is not "free to legislate. The balancing of all of the interests involved must be, and we assume has been, undertaken by Congress." *Emerson v. Steffen,* 959 F.2d at 124.

Plaintiff's motion for summary judgment is DENIED. Defendant Shalala's cross motion for summary judgment is GRANTED. The Clerk is directed to enter judgment in favor of defendants and against plaintiff class.

IT IS SO ORDERED.