44 F.3d 399
 46 Soc.Sec.Rep.Ser. 347, Medicare & Medicaid Guide
P 43,002,
1995 Fed.App. 12P
 Sharon HAZARD, et al., Plaintiffs-Appellees,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellant (93-6214),
Robert Grunow, Commissioner of Tennessee Department of Human
Services, et al., Defendants-Appellants (93-6260).
 Nos. 93-6214, 93-6260.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 19, 1994.
Decided Jan. 11, 1995.
 
 Lenny L. Croce, Paul E. Drozdowski (argued and briefed), Rural Legal Services of Tennessee, Oak Ridge, TN, Gordon Bonnyman, Legal Services of Middle Tennessee, Inc., Nashville, TN, for plaintiffs-appellees Sharon Hazard, for Kristopher Hazard, Jeffrey Hazard, for Kristopher Hazard, Kristopher Hazard, Billy Joe Melton, for Connie Marie Melton, Anna Louise Melton, for Connie Marie Melton, Connie Marie Melton, Reba Sherrill, for Emily Outlaw and Brenna Outlaw, Huey Outlaw, for Emily Outlaw and Brenna Outlaw, Emily Outlaw, Brenna Outlaw, Donna Jones, for Jessica Solomon and Aaron Jones, Jessica Solomon, Aaron Jones.
 Michael L. Roden, Asst. U.S. Atty., Office of U.S. Atty., Nashville, TN, David W. Carpenter, Dept. of Health and Human Services, Office of Gen. Counsel, Atlanta, GA, Christine N. Kohl (argued), U.S. Dept. of Justice, Civ. Div. Appellate Staff, Malcolm L. Stewart (briefed), U.S. Dept. of Justice, Civ. Div., Barbara C. Biddle (briefed), U.S. Dept. of Justice, App. Staff, Civ. Div., Washington, DC, for defendant-appellant Donna E. Shalala, Secretary of Health and Human Services.
 Sue A. Sheldon (argued and briefed), Office of Atty. Gen., Gen. Civ. Div., Nashville, TN, for defendants-appellants Robert Grunow, as Com'r of Tenn. Dept. of Human Services, Russell White, as Com'r of Tenn. Dept. of Health.
 Before: SUHRHEINRICH, SILER, and BATCHELDER, Circuit Judges.
 SUHRHEINRICH, Circuit Judge.
 
 I. Introduction
 
 1
 This appeal involves a challenge to the $1500 "automobile resource exemption" set by the Secretary of Health and Human Services ("Secretary"), for recipients of Aid to Families with Dependent Children ("AFDC"). See 45 C.F.R. Sec. 233.20(a)(3)(i)(B)(2) (1993).[1] Plaintiffs in this case were all denied AFDC and/or Medicaid benefits solely because they each own a vehicle worth more than $1500. Plaintiffs challenged both the Secretary's initial decision to set the automobile resource exemption at $1500 as well as her subsequent failure to adjust that figure for inflation. The district court declined to rule on the first issue, and agreed with the plaintiffs on the second, granting summary judgment to plaintiffs and enjoining enforcement of the regulation.[2] Both the federal and state defendants appeal.
 
 
 2
 The issues raised here already have been considered in several jurisdictions with mixed results. Three other appellate courts have ruled in the Secretary's favor, see Brown v. Shalala, 46 F.3d 102 (1st Cir.1995),[3] Champion v. Shalala, 33 F.3d 963 (8th Cir.1994) (affirming district court's decision upholding the exemption); Falin v. Shalala, 6 F.3d 207 (4th Cir.1993) (per curiam opinion adopting wholesale decision of district court), cert. denied, --- U.S. ----, 114 S.Ct. 1551, 128 L.Ed.2d 200 (1994), as have several district courts. See Gamboa v. Rubin, No. 92-00397, 1993 WL 738386 (D.Haw. Nov. 4, 1993) (upholding regulation), appeal filed, No. 94-15302 (9th Cir. Jan. 26, 1994); see also Frederick v. Shalala, 862 F.Supp. 38 (W.D.N.Y.1994) (denying plaintiff's motion for preliminary injunction on grounds that plaintiff was not likely to succeed on merits); Hall v. Towey, No. 93-1780-CIV-T-21B, 1993 WL 738454 (M.D.Fla. Dec. 10, 1993)(same) (unpublished). In contrast, in addition to the one at hand, three district courts have concluded that the regulation is arbitrary and capricious. See Lamberton v. Shalala, 857 F.Supp. 1349 (D.Ariz.1994); Brown v. Shalala, 868 F.Supp. 405 (D.N.H.1993), reversed, 46 F.3d 102 (1st Cir.1995); We Who Care, Inc. v. Sullivan, 756 F.Supp. 42 (D.Me.1991). We agree with those courts that have upheld the regulation, and REVERSE.
 
 II. Facts
 A. Plaintiffs
 
 3
 Plaintiff Sharon Hazard suffers from Ehlers-Danlos syndrome, a severe connective tissue disease. She is unable to use her legs or her left arm and is confined to a wheelchair. Sharon's son, Kristopher Hazard, is also afflicted with a severe abnormal platelet aggregation disorder. At the time of their application for benefits in 1990, the Hazards owned a pickup truck valued at $8250. The community donated proceeds used to purchase the truck. The Hazards were denied benefits in February 1991 solely because they exceeded the automobile resource limit. The Hazards allegedly use the truck to transport Ms. Hazard's 225-pound wheelchair, carry Sharon and Kristopher to doctors' appointments and for medical emergencies. The Hazards live in a rural area that lacks public transportation.
 
 
 4
 Plaintiff Anna Louise Melton, a registered nurse, has diabetes mellitus and needs continuous medical care. Her husband, plaintiff Billy Joe Melton, suffers from Black Lung disease, and requires regular treatment at the Black Lung Clinic. The Meltons were denied Medicaid benefits solely because their pickup truck valued at $9250 exceeded the automobile limit. They, too, use the vehicle to get to doctors' appointments as public transportation is unavailable.
 
 
 5
 Plaintiff Reba Sherrill and her husband, plaintiff Huey Outlaw, have two daughters. In July 1990, Sherrill allegedly was stricken by a series of incapacitating illnesses related to a failure of her immune system identified as idiopathic anaphylaxis. She is unable to work, and her family's current income is $50 a month. Sherrill was denied benefits because her Acura, purchased when both she and her husband were working, was valued at $11,000 at the time of the application.
 
 
 6
 Plaintiffs filed suit pursuant to 5 U.S.C. Secs. 702 and 706, 42 U.S.C. Sec. 1983, and Title XIX of the Social Security Act. They sought a declaratory judgment that the vehicle resource exemption is arbitrary and capricious, that it was promulgated in violation of the Administrative Procedure Act, 5 U.S.C. Sec. 553, and that the state's application of this limitation to the state Medicaid scheme violated the Medicaid Act, 42 U.S.C. Sec. 1396 et seq. They also sought a permanent injunction[4] against further use of the asset limit in both the AFDC and Medicaid context.
 
 B. District Court Proceedings
 
 7
 The district court granted summary judgment for the plaintiffs and enjoined the enforcement of 45 C.F.R. Sec. 233.20(a)(3)(i)(B)(2). The court opted not to rule on the rationality of the automobile resource limitation at the time of its enactment in 1982. It did conclude, however, that even if the regulation initially was rational, the Secretary's failure to adjust it periodically to factor in inflation negated the Secretary's purpose of "set[ting] an asset exclusion amount that would not in itself lead to application denials but would rather keep the 'vast majority' of recipients in the program." 827 F.Supp. at 1352 (relying on the published explanation made by the Secretary at the time of the regulation's enactment). Thus, in the district court's view, the rise in automobile costs due to inflation, "without a concurrent adjustment in the level of the automobile exclusion, means that the Secretary's stated purpose is now thwarted.... The regulation has now become a tool for denying applications, instead of a tool for protecting self-sufficiency...." Id.
 
 
 8
 Although it acknowledged that Congress, in OBRA, did not mandate a review of regulations in light of inflation, the district court believed that the "Secretary himself rendered this silence unimportant by promulgating a rationale for the regulation that implied sensitivity to changing financial conditions," id. at 1353, and that "where a regulation's rationality is dependent on current socioeconomic conditions periodic review is essential to preserve that rationality." Id.
 
 
 9
 As for the Medicaid regulations, the court held that the $1500 limit is also arbitrary and capricious, as no separate rationale had been proffered to justify the limit's application to Medicaid. Id.
 
 III. Statutory and Regulatory Background
 A. Federal
 
 10
 In 1935, Congress established the AFDC program by Title IV of the Social Security Act of 1935. See Pub.L. No. 94-271, Title IV, Secs. 401 et seq., 49 Stat. 627 (1935). The AFDC program is a cooperative federal-state program designed:
 
 
 11
 [f]or the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection....
 
 
 12
 42 U.S.C.A. Sec. 601 (West 1991). Participating states receive matching funds as long as the state plan satisfies the requirements of 42 U.S.C. Sec. 602[5] and any regulations promulgated by the Secretary. See 45 C.F.R. Sec. 233.10.
 
 
 13
 The Secretary began imposing income and resource limitations upon the states in 1955. See Champion, 33 F.3d at 965; National Welfare Rights Org. v. Mathews, 533 F.2d 637, 643 (D.C.Cir.1976). Prior to 1981, the resource limit was $2000, without regard to the value of one automobile. Frederick, 862 F.Supp. at 40. In 1981, Congress passed the Omnibus Budget and Reconciliation Act ("OBRA"), which amended portions of the AFDC program, see 42 U.S.C. Sec. 602 (West Supp.1993), and imposed the first statutory limitations on allowable resources under the AFDC. OBRA of 1981 cut in half the $2000 resource limitation figure previously adopted by the Secretary. See Pub.L. 97-35, Sec. 2302, 95 Stat. 357, 844-45 (1981) (codified at 42 U.S.C. Sec. 602(a)(7)(B)). In addition, and of particular importance in this case, Congress delegated authority to the Secretary by providing that states must exclude "so much of the family member's ownership interest in one automobile as does not exceed such amount as the Secretary may prescribe...." 42 U.S.C. Sec. 602(a)(7)(B)(i). See Champion, 33 F.3d at 965. The Senate report regarding the legislation said:
 
 
 14
 [t]he committee believes that the present regulatory limit allows AFDC to be provided in situations in which families have resources upon which they could reasonably be expected to draw.... The committee agreed to limit the value of resources to assure that aid would be restricted to those most in need.
 
 
 15
 Id. (quoting S.Rep. No. 139, 97th Cong., 1st Sess. 503 (1981), reprinted in 1981 U.S.C.C.A.N. 396, 769-70).
 
 
 16
 The Secretary ultimately promulgated regulations setting the automobile resource exemption at $1500 equity value. See 45 C.F.R. Sec. 233.20(a)(3)(i)(B)(2). In its September 21, 1981 notice of proposed rulemaking, the Secretary explained how he arrived at the $1500 figure:We chose $1,500 as the maximum equity value for an automobile on the basis of a Spring 1979 survey of food stamp recipients. Data from that survey suggest that 96 percent of all food stamp recipients who own cars had equity value in them of $1,500 or less. In that the Federal maximum limit should be set within the range of the vast majority of current recipients and given that the food stamp population tends to be, on the average, more affluent than AFDC recipients, this limit appears reasonable and supportable.
 
 
 17
 46 Fed.Reg. 46750, 46755 (1981). The Secretary reaffirmed this statement when he made effective the final rule. See 47 Fed.Reg. 5648, 5657 (1982). The Secretary has not changed the $1500 vehicle asset limitation to date. See 45 C.F.R. Sec. 233.20(a)(3)(i)(B)(2) (1993).
 
 
 18
 In 1988, Congress passed the Family Support Act of 1988. During the enactment process, a congressional conference committee "direct[ed] the Secretary to review the regulation establishing limits on the value of a vehicle and to revise them if [she] determines revision would be appropriate." H.R.Conf.Rep. No. 100-998, 100th Cong., 2d Sess. 189 (1988), reprinted in 1988 U.S.C.C.A.N. 2776, 2897, 2977. The Secretary twice published proposed timetables to review the rule, see 55 Fed.Reg. 16,216 (April 23, 1990); 55 Fed.Reg. 44, 521 (Oct. 29, 1990), but subsequently withdrew the notice to review. 56 Fed.Reg. 17,358 (April 22, 1991).
 
 B. State
 
 19
 Tennessee participates in the AFDC program. The state defendants apply the automobile asset limit, 45 C.F.R. Sec. 233.20(a)(3)(i)(B)(2), as part of the state AFDC program through Tenn.Admin.Comp.Rule 1240-1-4-.10(2)(b).
 
 
 20
 Tennessee also applies this regulation to state applicants for Medicaid that fall within one of two optional "medically needy groups" comprised of children and their caretakers or "Category 6." Tenn.Admin.Comp.Rule 1240-3-3-.05(2). The other optional Medicaid group is disabled adults or "Category 9" recipients. Id. Both medically needy groups may retain any resources permitted under the Supplemental Security Income ("SSI") program, Title XVI of the Social Security Act. Id. Sec. 1240-3-3-.05(1). Under the Tennessee provisions, both groups are subject to the SSI resource limitations: $2000 for an individual, $3000 for a couple, and $100 for each additional family member. See id. However, whereas Category 9 recipients receive the benefit of the SSI vehicle asset limit (up to $4500 equity), and no limit for one vehicle regardless of value if it is used for regular medical treatment or necessary to perform daily activities due to location, climate, distance or similar factors, 20 C.F.R. Sec. 416.1218(b)(1); Tenn.Admin.Comp.Rules 1240-3-3-.03(2)(1)(iii) and 1240-3-3-.05(2)(b), Category 6 recipients are subject to the $1500 AFDC vehicle asset limit and there is no exclusion based on the household's use. 45 C.F.R. Sec. 233.20(a)(3)(i)(B)(2); Tenn.Admin.Comp.Rule 1240-3-3-.05(2)(a).
 
 IV. Analysis
 A. Standing
 
 21
 As an initial matter, we must consider the state defendant's contention that plaintiffs do not have standing. The gist of the argument is that even if plaintiffs demonstrate that the $1500 automobile resource limit is unreasonable per se, because the equity value in their automobiles is so far above the $1500, we would have to presume, unreasonably, a dramatic increase in the figure to find standing. We are not persuaded. As noted by the lower court, it is undisputed that the $1,500 automobile equity limit has prevented the plaintiffs from qualifying for AFDC and/or Medically Needy Medicaid benefits, and neither defendant has offered any other reason why plaintiffs would be ineligible. Thus, we think it can be said that plaintiffs suffered an actual injury, that the injury is traceable to defendants' conduct, and that the injury is redressable, which is all that standing requires. Lujan v. Defenders of Wildlife, --- U.S. ----, ----, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); Cleveland Surgi-Center, Inc. v. Jones, 2 F.3d 686, 688 (6th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 696, 126 L.Ed.2d 633 (1994).B. Adjusting Regulation for Inflation
 
 
 22
 We begin our analysis of the merits with the argument the district court did consider and decide: whether the Secretary has acted unreasonably in failing to adjust the $1500 automobile resource exemption to reflect inflation. Because Congress expressly delegated its rulemaking authority to the Secretary, we are to give such regulations controlling weight "unless they are arbitrary, capricious, or manifestly contrary to the statute." Chevron, USA, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).
 
 
 23
 The Secretary argues that absent express legislation, administrative agencies do not have an overriding, judicially-enforceable duty to review and amend validly-promulgated regulations to reflect inflation. We agree. As noted by the Champion court:
 
 
 24
 Nothing in the language of OBRA supports the notion that the Secretary is obligated to increase the amount of the exemption absent a congressional directive. Congress, which has mandated cost-of-living adjustments in other programs, see, e.g., 42 U.S.C. Sec. 415(i) (1988 & Supp. IV 1992) (Social Security benefits); 29 U.S.C. Sec. 720(c) (1988 & Supp. IV 1992) (vocational rehabilitation grants), included no such provision in the OBRA amendments to the AFDC program. Moreover, as we have observed, OBRA itself cut in half the general limit on allowable resources under AFDC, and Congress has not adjusted that amount for inflation. Finally, the record demonstrates that Congress is aware of this issue, as it twice has considered amending the automobile exemption, but has declined to do so.[6]
 
 
 25
 Champion, 33 F.3d at 967. See also Falin v. Sullivan, 776 F.Supp. 1097, 1101 (E.D.Va.1991) ("nothing requires the Secretary of HHS to adjust upwardly automobile equity limits in response to inflation"), aff'd, 6 F.3d 207 (4th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1551, 128 L.Ed.2d 200 (1994); Frederick, 862 F.Supp. at 42 ("The statute, 42 U.S.C. Sec. 602(a)(7)(B)(i), which directed the Secretary to create the exclusion, places no duty upon the Secretary to periodically adjust the limit."). Cf. Garnett v. Sullivan, 905 F.2d 778, 782 (4th Cir.1990) (Secretary is not required to adjust Supplemental Security Income ("SSI") to reflect market conditions). In short, contrary to the district court's conclusion, the Secretary was under no duty to adjust the vehicle asset figure for inflation.
 
 
 26
 Plaintiffs counter that the failure to increase the vehicle resource standard conflicts with the congressional intent of the statute as set forth in 42 U.S.C. Sec. 601. Plaintiffs contend that the AFDC vehicle asset limit reduces work opportunities because it forces families to depend on unreliable transportation, thereby thwarting the ability of recipients to become self-sufficient. The Secretary responds that inflation's effect of gradually tightening eligibility standards is consistent with congressional intent in enacting OBRA.
 
 
 27
 Although plaintiffs' argument has intuitive and emotional appeal, we once again turn to the Eighth Circuit's response to this argument:
 
 
 28
 We also are not persuaded by Champion's argument that the Secretary's decision to set the automobile exemption at $1500 is unreasonable in light of the statutory purpose. The fundamental goals of the AFDC program remain intact: to provide assistance to needy families with dependent children and to do so in a way that encourages self-sufficiency. OBRA's amendments to the AFDC program, however, alter the method of pursuing these goals. Minnesota v. Heckler, 739 F.2d 370, 375 (8th Cir.1984). Congress's purpose in passing OBRA was to reduce spending and to restrict AFDC only to those households most in need. See id. ("Congress's goal in enacting OBRA clearly was to reduce federal spending."); Dickenson v. Petit, 692 F.2d 177, 179, 181 (1st Cir.1982) (noting that the amendments were enacted "to reduce the size of the AFDC grant" and to "disburs[e] benefits only to the most destitute"); Philadelphia Citizens in Action v. Schweiker, 669 F.2d 877, 879 (3d Cir.1982) (stating that the primary purpose of the amendments was to restrict welfare benefits only to the most needy). To this end, OBRA itself cut in half the general limit on resources allowable to those receiving AFDC benefits. We conclude that the Secretary's $1500 limit, which according to the survey would have affected only 3% of all Food Stamp recipients (and presumably fewer recipients of AFDC), is a reasonable accommodation of Congress's mandates to provide for the needy while reducing federal spending.
 
 
 29
 Champion, 33 F.3d at 967. See also Frederick, 862 F.Supp. at 43 ("the $1500 vehicle equity limit was actually set not contemporaneously with the original enactment of AFDC, but pursuant to OBRA, 'the central purpose of which was to reduce government expenditures' " (internal quotations and citations omitted)); Falin, 776 F.Supp. at 1101 ("Although plaintiff's argument appeals to a sense of fairness, the $1500 limit was enacted in compliance with the OBRA, not the Family Support Act."). We agree, and hold that the lower court erroneously determined that the Secretary is required to adjust periodically the automobile resource exemption to reflect inflation. In other words, the regulation promulgated by the Secretary is not inconsistent with the goals of Sec. 601, as modified by the OBRA amendments, and therefore is not arbitrary or manifestly inconsistent with the statute under the Chevron test.
 
 C. Establishment of the $1500 Figure
 
 30
 Having concluded that the Secretary's failure to increase the vehicle asset limit in light of inflation was not unreasonable, we must consider plaintiffs' alternative argument that the choice of the $1500 figure on the basis of the 1979 food stamp survey was arbitrary and capricious. Plaintiffs contend that because food stamp and AFDC recipients are so dissimilar, data regarding one population is irrelevant to the other. Specifically, they argue that in 1979, the resource eligibility rules under the food stamp program were $1750, with a vehicle resource exemption of $4500, whilst AFDC households were limited to $2000, with no vehicle asset restriction. Thus, because individuals who had significant equity in vehicles would not have satisfied the food stamp requirement, and therefore not been included in the survey, the survey is not indicative of patterns of vehicle ownership among AFDC recipients.
 
 
 31
 In support of their argument, plaintiffs rely on the assertion in the food stamp survey that "[t]he effect of just the limit on vehicles is to make 1.8 million persons ineligible for food stamps." However, as the Secretary points out, the survey also concludes that:
 
 
 32
 Assuming that these persons made ineligible by the vehicle limit participate at the same rate as persons currently eligible, 1.2 million additional persons would participate in the program in the absence of the limit on vehicle assets. The cost to the program if these persons were to participate would be $435 million, equivalent to 4 percent of projected food stamp benefit costs for fiscal year 1981.
 
 
 33
 As the survey itself reveals, the 1979 vehicle asset limitation for food stamp recipients excluded only a small percentage of individuals who otherwise would have been eligible to receive food stamps. Thus, contrary to plaintiffs' assertions, the two populations were not so different as to render reliance on data regarding the food stamp survey irrational.[7] 7] In sum, we think the Secretary's reliance on the 1979 food stamp survey was reasonable, especially in the absence of other information. See generally, Champion, 33 F.3d at 966-67; Falin, 776 F.Supp. at 1101.
 
 V.
 
 34
 We find that plaintiffs' remaining contentions do not warrant discussion. For all the foregoing reasons then, the judgment of the district court is REVERSED, and the matter REMANDED with instructions to enter judgment in favor of defendants.
 
 
 
 [1]
 45 C.F.R. Sec. 233.20(a)(3)(i)(B)(2) provides that a state may exclude "[o]ne automobile, up to $1,500 of equity value or such lower limit as the State may specify in the State plan; (any excess equity value must be applied towards the general resource limit specified in the State plan)...."
 
 
 [2]
 The district court's decision is published at 827 F.Supp. 1348 (M.D.Tenn.1993)
 
 
 [3]
 There is no discussion of this opinion because the First Circuit's opinion was issued after this opinion was filed
 
 
 [4]
 Plaintiffs had previously applied for, and received, a preliminary injunction. See Court's Order and Mem. of January 1, 1992. In that order the court also denied plaintiffs' motion for class certification and granted the state defendants' motion to dismiss plaintiffs Grunow and White in their individual capacities. None of these rulings was appealed
 
 
 [5]
 42 U.S.C. Sec. 602, entitled "State plans for aid and services to needy families with children; contents; approval Secretary; records and reports; treatment of earned income advances," sets out the conditions which a state plan must satisfy to receive federal approval
 
 
 [6]
 Congress has twice considered, but ultimately declined to enact, legislation altering the automobile resource exemption. Included in the House version of OBRA of 1987 was a proposal that up to five states be permitted to carry out AFDC demonstration project where the automobile value limit would be increased to an amount comparable to that exempted in the food stamp program. See H.R. 3545, Sec. 9111(c), 133 Cong.Rec. 29966, 30069 (Oct. 29, 1987). This legislative proposal did not make it into the final version, however. See Pub.L. No. 100-203, 101 Stat. 1330 (1987). Congress considered the issue once again in the Family Support Act of 1988, but it did not make it into law; rather, a conference committee instructed the Secretary to review the regulation and determine whether any revision was appropriate. See H.R.Conf.Rep. No. 998, 100th Cong., 2d Sess. 189 (1988), reprinted in 1988 U.S.C.C.A.N. 2776, 2977. The Secretary decided not to revise the provision, upon concluding that increasing the exemption to $3000 would cost over $200 million and would necessitate offsets in other programs for the needy to compensate for the increase. See Champion v. Shalala, 33 F.3d 963, 967-68 (8th Cir.1994)
 
 
 [7]
 In any event, this argument is somewhat disingenuous, because the absence of an automobile resource exemption for AFDC recipients in 1979 was due to the fact that the previously-imposed $2250 automobile resource limit set by the Secretary of the Department of Health, Education and Welfare had been struck down by the D.C. Circuit in National Welfare Rights Org. v. Mathews, 533 F.2d 637 (D.C.Cir.1976) (holding, inter alia, that regulation was defective because the Secretary had improperly relied on fair market, rather than equity value, in setting figure)